BAKER et al., Respondents, v. PULITZER PUB-LISHING COMPANY, Appellant.

St. Louis Court of Appeals, December 1, 1903.

1. **PRACTICE:** Instruction: Singling out Evidence.  An instruction which directs the attention of the jury to the evidence introduced by plaintiff, to show what must be proven in order to make out plaintiffs' case, is not open to the objection that it singles out the evidence of any witness and comments upon it, making it unduly prominent.

2. **QUANTUM MERUIT:** Extra Work.  Where architects, in addition to the work which they had contracted to do for a fixed price, do other work for the defendant, they may recover the reasonable value of such extra work, provided the defendant had promised to pay them therefor, or had ordered such extra work to be done by them.

3. **EVIDENCE:** Letters of Party Introducing Them.  Where defendant offers in evidence a letter from defendant to plaintiffs tending to prove an understanding between plaintiffs and defendant, which would prevent plaintiffs' recovery, it is not error to admit in evidence plaintiffs' letter in reply which explains plaintiffs' position and tends to rebut the assumptions of the former.

4. ———: ———: Harmless Error.  A paragraph in a letter introduced by plaintiffs, which merely makes an argument in their favor, should have been excluded, but inasmuch as the jury could not have been prejudiced by it, its introduction was not reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Judson & Green* for appellant.

(1) The court erred in modifying instruction No. 1 offered by appellant and in refusing to give said instruction as offered. (a) Because respondents pleaded an express promise of appellant to pay for the alleged extra services, and the said instruction as modified, permitted respondents to recover upon an implied promise. Planing Mill v. Brundage, 25 Mo. App. 271; Clark v. Kane, 37 Mo. App. 268; Eyerman v. Association, 61 Mo. 489; Bank v. Payne, 31 Mo. App. 512; Lewis v. Slack, 27 Mo. App. 119; Yeats v. Ballentine, 56 Mo. 530. (b) Because respondents not only pleaded an express promise to pay for the alleged extra services, but they both testified that appellant expressly promised them extra pay for said services before they were rendered. There can be no implied promise in reference to a matter that is covered by the express promise of the parties. Suits v. Taylor, 20 Mo. App. 166; Christy v. Price, 7 Mo. 430; Whiting v. Sullivan, 7 Mass. 107; Planing Mill v. Brundage, 25 Mo. App. 271. (c) Because the evidence offered by appellant tended to show that it notified respondents, before the alleged extra services were rendered, that it would not pay them more than $500 for their entire work, and the law law never implies a promise to pay for alleged extra work contrary to the expressed intent of the party whom it is sought to charge therefor. Mansur v. Murphy, 49 Mo. App. 266; Bittrick v. Gilmore, 53 Mo. App. 53; Lippman v. Tittman, 31 Mo. App. 69; Bliss on Code Pleading, secs. 128, 153, 154. (2) The trial court also erred in giving respondent's instruction No. 1. This instruction is erroneous, in that it directs the attention

of the jury to the testimony of the architects who testified as experts in behalf of respondents, that the reasonable value of such services is ten per cent of the cost of the repairs, without regard to the actual labor involved. It singles out that evidence, comments upon it, and by thus directing the attention of the jury to it, makes it unduly prominent. Blashfield on Instructions to Juries sec. 105; Dobbs v. Cates, 60 Mo. App. 65; Jones v. Jones, 57 Mo. 142; Miller v. Marks, 20 Mo. App. 369; McFadin v. Catron, 120 Mo. 270; Safe Deposit Co. v. Berry, 49 Atl. 401. (3) The trial court erred in admitting the letter of September 25, 1902, in evidence. It was inadmissible for any purpose whatsoever, and its erroneous admission, with its self-serving declarations and arguments, was manifestly prejudicial to appellant and it will be presumed to have been harmful. Weil v. Posten, 77 Mo. 284; State v. McConnor, 51 Mo. 160; Johnson v. Dicken, 25 Mo. 580.

*Rassieur & Rassieur* for respondents.

(1) The petition in this case is based upon *quantum meruit*. Chapman v. Currie, 51 Mo. App. 40; Warder v. Seitz, 157 Mo. 148; Redman v. Adams, 165 Mo. 70; Miller v. Eldridge, 126 Ind. 461; 2 Ency. Plead. and Prac., p. 997. (2) Plaintiff's instruction is not erroneous. The reference to the percentage charge is proper because if that was the proper basis of charge for such service, then plaintiffs were entitled to that amount as a matter of law, and the jury should be so instructed. State v. Seal, 47 Mo. App. 608; Steinwender v. Creath, 44 Mo. App. 367; Leeser v. Boeckhoff, 33 Mo. App. 238.

BLAND, P. J.—Plaintiffs are partners doing business under the firm name and style of Baker & Knell. The defendant is a business corporation. The petition is in three counts. The sums demanded in the second

and third counts were confessed by the answer. The issues were made upon the first count. The evidence was all directed to these issues. It is alleged in the first count that plaintiffs are architects and as such were employed by defendant to furnish drawings and specifications and to superintend the making of the following alterations in defendant's buildings numbers 210 and 212 North Broadway, in the city of St. Louis, to-wit:

"Certain excavations in basement; a granitoid floor in basement; brick foundations for two presses for basement, a longitudinal partition on the first floor, separatin the counting-room from the pressroom and stereoroom; a seventy-foot marble-top counter for the first floor; one flight of stairs from first to second floor; a tile vault on first floor eight feet by ten feet; the removal of inside front show windows and rear wood partition; the building of a platform on first floor with mail chute from second floor; six mailing tables; the making of fifty carrier boxes; two dark rooms and ten water closets; and certain other work, now to the plaintiffs unknown, all of which work was to be erected in the manner then contemplated by the defendant, of a quality and character, however, not to exceed an aggregate cost of fifty-three hundred or fifty-four hundred dollars."

That the defendant agreed to pay plaintiffs five hundred dollars for the above alterations.

The petition further alleges that the plaintiffs entered upon the performance of their undertaking with defendant. "And from time to time, the defendant, upon the suggestions of the plaintiffs, and of its own motion, changed the character of the work contemplated under their said original agreement, and requested the plaintiffs to do other and different work than that contemplated in their said agreement, and directed the plaintiffs to furnish the necessary drawings and specifications for, and to supervise the making of the following alterations for the defendant in its said building, that is to say: in addition to the alterations aforesaid, except

where such alterations were changed by the work hereinafter specified, the defendant required the plaintiffs to furnish the drawings, detailed drawings and specifications for, and to supervise the erection of the following work and alterations to-wit: The defendant required that independent steel foundations be erected for its old sextuple press which was to be installed on the first floor, to prevent the inconvenience and annoyance of vibration which would necessarily result if said press had been set upon the floor of said first story, as originally contemplated by the defendant; that the longitudinal partition separating the pressroom from the counting-room should be placed to the south side of the columns in said building, instead of to the north side, to prevent the conducting of the noise of the pressroom to the counting-room; that the stereo-room originally contemplated for the first floor, be constructed on the fourth floor to provide for ventilation for the counting-room, and also to provide proper quarters for a shipping-room that such shipping-room be arranged on the first floor; that independent steel foundations be also constructed for another press to be installed on the first floor but which was not originally contemplated by the defendant; that the counting-room which was originally to be constructed of plain wood and painted should be constructed and finished in mahogany, with mahogany ceiling, columns, partition and wainscoating, and mahogany panels, mahogany counter, cabinets, and special desks, and tile floor, railings, cages, and a circular postoffice arrangement, none of which was originally contemplated; that the defendant also required a change of the stairways and the putting in of different stairways; that a newsboys' room with granitoid floor, cages and inclosed steel stairway be constructed; that all stairways from second to sixth story be encased with partitions; that a mail chute be constructed; also, a suspended maining gallery on second floor; also, certain additional partition work on second floor, and railings separating the

different departments of the editorial room on third floor; also pigeon-hole cabinets on third floor; defendant also changed the plumbing throughout, requiring better and more costly work; defendant also required the erection of a fire escape; also an independent foundation for its Scott press, which was not contemplated under the original agreement; also, a safety vault to be constructed in the basement within said press foundations; also certain partitions in basement; defendant also required a change of its whole store front; also a maple floor, back of counter in counting-room, and a lot of detail work in connection with the presses, gallery, railing, floor glass and iron stairway to basement, none of which was contemplated under their original agreement.

"The plaintiffs state that at the request of the defendant, they performed the service of preparing the plants and detail drawings for all of said work and for all other work required by the defendant in the remodeling of said building, and in making the changes and alterations then made by defendant, and plaintiffs supervised the construction of all of said work including the painting thereof; that said services were rendered continuously from December 6, 1901, until about December 1, 1902, and that for at least four months of said time, the plaintiffs were also required to perform the services required as aforesaid, at night, in order to complete the same as the requirements of the defendant demanded; that the cost of said work in the aggregate was at least forty-six thousand, four hundred dollars, instead of the maximum of fifty-four hundred dollars, as contemplated under their original agreement.

"That in addition to the foregoing, the plaintiffs also at defendant's request, prepared the plans for the remodeling of the basement of the adjoining premises, No. 208 North Broadway, and the connections between the same and said building No. 210-212 North Broadway, and the plaintiffs also rendered service in appear-

ing at the request of the defendant, before the commissioner of public buildings, and before the board of appeals and procured a permit for the erection of the fire escape in the rear of said building, No. 210-212 North Broadway, instead of on the front, as originally required by the said commissioner.

"Plaintiffs further state that under their original agreement, they are entitled to a compensation of five hundred dollars for the work so required, and work done in lieu thereof, costing fifty-four hundred dollars in the aggregate, and for all additional work performed by them, as aforesaid, in excess of the cost originally contemplated under their said agreement, they are entitled to the reasonable value of their services in performing the work required of them, in devising, planning and supervising the said additional work the cost of which was forty-one thousand dollars as aforesaid, and the defendant, through its legally authorized representatives, from time to time during the progress of the work, and before the performance of the same by the plaintiff, promised to pay plaintiffs, such reasonable compensation for all such additional work, so required.

"That the reasonable value of such services as rendered by the plaintiffs, in excess of the work originally contemplated costing $41,000, as aforesaid is ten per cent of such cost, to-wit, forty-one hundred dollars.

"That in December, 1901, at the request of the defendant, one of the plaintiffs, but for the said partnership, went to Chicago, Illinois, with a representative of the defendant for the purpose of making an examination of newspaper establishments in said city, in order to promptly advise the defendant as to the proper construction of certain parts of the work then contemplated by the defendant in the remodeling of its said building No. 210-212 North Broadway, and plaintiffs made such examination and advised the defendant in the premises. That three days were consumed in rendering such special service for the defendant, and such service was reas-

onably worth one hundred and fifty dollars, and the defendant promised and agreed to pay the same, but failed to do so."

Omitting immaterial allegations, the answer to the first count is as follows:

"Further answering said first count, defendant says that on or about the sixth day of December, 1901, it entered into an agreement with plaintiffs whereby for a consideration of five hundred dollars to be paid by the defendant to plaintiffs said plaintiffs agreed to furnish all the necessary drawings and specifications and to supervise the making of all repairs, alterations and changes defendant might desire to have made in its building known as numbers 210 and 212 North Broadway in the city of St. Louis, it being agreed that the said sum of $500 should be in full for all services that plaintiffs as supervising architects might be called upon to render in furnishing the necessary drawings and specifications and in supervision of said alterations and repairs; and defendant denies that said contract or agreement between it and plaintiffs was ever thereafter changed, added to or modified in any form or manner whatsoever; and defendant says, that it was further agreed between it and plaintiffs at the time said contract was made that any changes in the plans for said alterations and repairs that might thereafter be made should not increase the amount to be paid plaintiffs for their said services.

"Defendant further says that the aforesaid agreement between plaintiffs and defendant also covered and included all repairs and alterations in the basement of the adjoining premises, No. 208 North Broadway, and the connections between said building and the building Nos. 210 and 212 North Broadway, and also all services rendered in appearing before the commissioner of public buildings and before the board of appeals for the purpose of procuring a fire escape in the rear of said buildings Nos. 210 and 212 North Broadway, and any

and all other work done by plaintiffs in connection with said repairs and alterations to said buildings or either of them.

"Defendant further says that it has paid plaintiffs on account for said services the sum of $300, and that there still remains due from defendant to plaintiffs on account of said $500 agreed to be paid for said services the sum of $200, which amount defendant has always been ready and willing to pay said plaintiffs, and hereby tenders the same into court for the use and benefit of plaintiffs."

A reply was filed denying the new matter in the answer.

The evidence shows that a few days prior to the making of the contract to pay $500 for plans and specifications and the supervision of the work, a rough plan and an estimate of the cost of the alterations to be made was submitted by one of defendant's agents to the plaintiffs; that the cost of the alterations as shown by the estimate was $5,400. Plaintiffs' evidence shows that on this estimate, they agreed to furnish plans and specifications and to supervise the construction for $500. After plaintiffs entered upon the performance of their contract, additional work of reconstruction, amounting to $41,000, was required by defendant, for all of which extra work plaintiffs, at defendant's request, furnished plans and specifications and superintended the work. It is claimed by plaintiffs that for this extra work, defendant agreed to pay them a reasonable compensation and that ten per cent of the cost was such reasonable compensation, and plaintiffs' evidence tends to prove that the defendant's superintendent agreed to pay a reasonable compensation for the extra work. Plaintiffs showed by the evidence of three architects that ten per cent of the cost of reconstructing a building was the usual and customary price paid to architects in the city

of St. Louis for furnishing plans and specifications and supervising the work of reconstructing a building.

The evidence of the defendant shows that the plaintiffs agreed to furnish plans and specifications and to superintend all work (except the boiler and electric work) of reconstruction, for a flat sum of $500 and that at the time of making the contract, it was not known to defendant or plaintiffs what particular alterations would have to be made to prepare the building for defendant's business, and that the alteration would have to be ascertained as the work progressed; that it was distinctly understood between defendant and the plaintiffs that plaintiffs were employed as architects for the purpose of not only preparing plans and specifications for particular work, but also to make plans and specifications for such alterations and reconstruction as were useful and necessary to convert the structure into a large printing house. There is a square contradiction in the evidence of plaintiffs and that of the officers of the defendant in respect to compensation for the extra work. The verdict of the jury however, settled that controversy in favor of the plaintiffs.

Plaintiffs sent a bill to the defendant, in September, 1902, when the work was about completed, charging ten per cent of the cost of the extra reconstruction work and demanding payment of the same. On receipt of the bill, September 24th, W. C. Steigers, business manager of defendant, wrote plaintiffs the following letter:

"St. Louis, Mo., Sept. 24, 1902.
"Messrs. Baker & Knell, City.

"Dear Sirs: I find the enclosed bill on my desk. As I have no knowledge whatever of any arrangement which justifies a bill of this character, will thank you to explain why we are presented with this. You could not have forgotten the arrangement made with your firm and myself for a flat rate in compensation for your ser-

vices of supervising the work to be done at our present
building.   Awaiting your reply,

"Yours truly,

"W. C. STEIGERS,

"Business Manager."

On the following day plaintiffs wrote and sent to
Steigers, the following answer to the above:

"Sept. 25, 1902.

"W. C. Steigers, Esq.,

Business Manager Post-Dispatch.

"Dear Sir:   Yours of the 24th as to our bill re-
ceived.   The flat rate that you speak of was upon the
basis of actual cost of alterations as at that time contem-
plated and the flat rate that you mention was based upon
the estimates you furnished us at that time from Mr.
Sam Ross, based upon the work you then contemplated;
this estimate amounted to $5,400; our position at the
time was that we expected a ten per cent commission
which would make our commission $540; you suggested
that we make it a $500 flat rate and as this was only $40
less than what, on a percentage basis of ten per cent, our
commission would amount to, we acquiesced and agreed
to do the architectural work necessary to perform $5,-
400 worth of work for $500.   At that time your Mr.
Taylor made the proposition to our Mr. Knell that he
accept seven per cent as a commission but Mr. Knell de-
clined this on account of it being so much below the
usual charge of ten per cent for this character of work;
it is obvious therefore that we expected more than Mr.
Taylor's proposition of seven per cent.

"The alterations instead of costing $5,400 as per
estimates furnished us by you, and instead of taking
only five weeks' work to perform as by you then sug-
gested, cost nearly $50,000 and consumed almost the en-
tire time of ten months' hard work on our part, includ-
ing night work, Sunday and holiday work and labor on

our part that no commission even at ten per cent could pay for.

"Your letter seems to express a surprise that we should have the effrontery to make such a claim; permit us to remind you that we both told you of our expected increase in compensation and to recall the time and place to your mind, you will recall taking Mr. Knell and Mr. Baker to Caesar's Cafe to show them your idea as to tiling; you will also recall that at that time we both told you that you could not expect our original estimate to hold good as the work that was already proposed at that time would far exceed your original intent; you told us not to worry about that part of the agreement that we could rely upon the justice and intelligence of the Post-Dispatch management to cover that part of the question.

"It might seem presumptuous on our part to make a comparison between humble architects and the business manager of a great paper, but for the sake of argument put yourself in our position.

"Suppose that some person would come to you and propose that you assume the management of a paper the circulation of which amounted to 5,400 copies daily; you would estimate that this would take but little of your time and that you could furnish your services on a basis proportionate to this small circulation; now suppose that after assuming charge of the paper you would find that instead of the paper having a circulation of 5,400 copies daily, its circulation would be 50,000 copies, would you, or could you be expected by any reasonable person to manage the latter at the same compensation as the former? The proposition is so palpable that we must express the same surprise at your letter as you would seem to have expressed at our statement as to what we deemed you owed us.

"Very sincerely,

"Baker & Knell, Architects."

Counsel for defendant objected to the admission of the letter and especially to the last part of it. The following occurred during the reading of this letter:

"Mr. Green: I object to that portion of the letter and ask to have it excluded.

"The Court: I don't see how I can cut it out.

"Mr. Green: I ask the court to instruct the jury that that is no evidence of the facts stated in the letter.

"Mr. Rassieur: Then offer a written instruction.

"The Court: Proceed."

No part of the letter was excluded by written instruction or otherwise.

The court gave an instruction for plaintiffs as follows:

"1. It is admitted by the defendant that it employed the plaintiffs to render certain architectural services, and that it agreed to pay the plaintiffs the sum of $500 therefor and that but $300 of this sum was paid to them prior to the institution of this suit. And the defendant also admits that the plaintiffs performed all of the services alleged to have been performed by them and that the cost of the work designed and superintended by them was at least $46,400.

"Therefore if you believe from the evidence that the plaintiffs for a consideration of $500, agreed to render all of the services which were actually rendered by them for the defendant, then the plaintiff can only recover upon the first count of the petition, the sum of $200, which has been tendered into court since the institution of the suit.

"But if you find and believe from the evidence that the plaintiffs agreed for a sum of $500, to prepare plans or drawings and superintend only certain work which was then specifically referred to by the defendant, and agreed to by the plaintiffs, and which was not to cost more than $5,400; and afterwards the defendant directed and required the plaintiffs to prepare plans or drawings for and superintend the other work in the petition re-

ferred to which cost in the aggregate at least $41,000 in addition, and that such other work was not included within the work agreed upon by the parties at the time when the defendant employed the plaintiffs, if you find that they did agree upon certain work only, which was to cost not more than $5,400, then the jury should allow the plaintiffs, in addition to the sum of $200 above mentioned, the usual and reasonable compensation for such additional services; and if you find that what is such usual reasonable compensation is determined by a fixed percentage or commission upon the cost of the work designed and superintended, then you should allow the plaintiffs, besides the $200, such usual commission on $41,000, being the excess cost over and above the maximum cost of $5,400 if you find that such maximum of cost had been agreed upon. And in that event you will also add interest at six per cent per annum, from January 17, 1903, the date of the institution of this suit."

The defendant asked the following instruction, to which the court added the clause in italics and gave it as modified:

"3. The court instructs the jury that the burden of proof is upon plaintiffs, and plaintiffs can not recover against defendant upon the first count of their petition for more than $202 unless they prove by a preponderance of all the evidence: First, that the alleged extra work described in the first count of their petition was not included in their agreement of December 6, 1901; and, second, that defendant through its officers promised and agreed to pay plaintiffs the reasonable value of such additional or extra services before the said services were rendered in addition to said sum of $500 promised by the agreement of December 6, 1901; *or that defendant's servants ordered said extra work to be done by plaintiffs.*"

Defendant contends that instruction number 1, given for plaintiff, singles out the evidence of the archi-. tects and comments upon it and makes it unduly promi-

nent. The instruction, in effect tells the jury that if they should find that the compensation for architects' services in reconstructing buildings is a fixed per cent of the cost of reconstruction and that such per cent is reasonable, then the plaintiffs' compensation, if the jury should find for them for the extra work, should be the fixed and reasonable per cent on the cost of the extra work. The instruction does not single out the evidence of any witness or witnesses for the plaintiffs, but directs their attention to the evidence introduced by plaintiffs to show what would be a reasonable compensation for the extra work. This was not only legitimate but necessary as a guide to the jury in estimating plaintiff's damages, should they find plaintiff entitled to compensation for the extra work. Another objection to the instruction and to instruction number three, given for defendant as modified by the court, is that plaintiffs' petition avers and their evidence proves, if it proves anything that defendant expressly agreed to pay ten per cent commission on the cost of the reconstruction and that these instructions authorized a recovery on a *quantum meruit*.

There is no controversy as to the payment of the $500. The allegation of the petition, in respect to the extra work, is that defendant "promised to pay plaintiffs, such reasonable compensation (ten per cent) for all such additional work so required." Baker's evidence is that in discussing the question of compensation for the extra work, Steigers said: "We want you to weld all the individual parts of this work into one harmonious whole;" that according to Mr. Knell's theory, "if any of these parts of work must be taken in with our [plaintiffs'] work, we would have to get additional compensation." Knell, the other plaintiff, testified that when they were called upon to do and were doing the extra work, he and Baker had a conversation with Steigers in respect to their compensation; that in this conversation Steigers said: "I am perfectly satisfied

that you should have more commission which, of course, we never expected this work would cost so much or we had any such fine work to be done." There is nowhere to be found in the record an express promise by defendant to pay ten per cent commission for the extra or any other work. Plaintiffs, in conversation with Steigers would speak of ten per cent as the commission they always charged for such work, and as the compensation they expected, but nowhere is it stated by any witness that Steigers promised to pay ten per cent commission for the work and we think the instruction given for defendant number three as modified and given by the court, correctly declared the law of the case.

In respect to the letter of September 25, 1902, from plaintiffs to Steigers, it is to be observed that it was offered in rebuttal and that defendant had laid a foundation for its introduction by previously introducing the letter of September 24th, from Steigers to plaintiffs. The latter letter not only tended to prove that there was an understanding whereby plaintiffs agreed to accept $500 as full compensation for their services, irrespective of the cost of reconstruction, but it also called for an explanation of the previous demands of plaintiffs for compensation for the extra work. The letter of September 25th gave the explanation called for and tended to rebut the assumption of Steigers that $500 was to be a flat rate of compensation for all the work of reconstruction and, in so far as it explains plaintiffs' understanding of the agreement, was legitimate testimony in rebuttal. The last paragraph—the argumentative clause—might with propriety have been excluded, and we think should have been excluded. But this clause does not state a single fact, or purport to state any fact, and could not have been accepted by the jury as evidence. It is a mere argument in plaintiffs' behalf, which either of them or their attorneys might have made at the proper time, and all that can be said against it is, that

it was out of order, and we can not see how the jury was prejudiced by it. Discovering no reversible error in the record, the judgment is affirmed. All concur.